**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Amal Talib and Patricia Thompson, individually and as a representative of all others similarly situated,<br><br>             Plaintiffs,<br><br>v.<br><br>AT HOME GROUP INC., AT HOME STORES LLC, and AT HOME PROCUREMENT INC.<br><br>             Defendants. | Case No. 1:23-cv-06807<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Amal Talib and Patricia Thompson (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, through their undersigned counsel, allege as follows against Defendants At Home Group Inc., At Home Stores LLC, and At Home Procurement, Inc. (collectively, "At Home"), based upon personal knowledge as to themselves and, as to all other matters, upon information and belief, including their counsel's investigation.

## INTRODUCTION

1.      At Home operates approximately 250 "Home Décor Superstore[s]" throughout the United States.[1] It touts itself as the "the leading destination for home décor."[2] The company "sells up to 45,000 home décor items for every room, every style and every budget,"[3] including furniture, storage, rugs, curtains, wall décor and items for the kitchen, bedroom, and bathroom.[4]

---

[1] *At Home Marks Company Milestone with 250th Store Opening*, Business Wire (June 15, 2022), https://www.businesswire.com/news/home/20220615005843/en/At-Home-Marks-Company-Milestone-with-250th-Store-Opening/.

[2] *Id.*

[3] *Id.*

[4] *At Home*, About Us, https://www.athome.com/about-us.html (last visited Aug. 7, 2023).

2.     At Home markets itself as a discount home goods provider—according to its website, it offers "must-have styles at unbeatable prices every day. And the best part? Our products are all backed by our Unbeatable Price Promise."[5]

3.     Its "Bed & Bath" department includes a selection of bed sheets that At Home manufacturers, labels, distributes, advertises, and sells at At Home locations throughout the country under its exclusively owned brand name "at home" and for which At Home represents directly on their packaging and/or labeling that their thread count is 1000 (hereinafter, "Luxury Sheets" or "Product"). For example:



_____

[5] *Id.*

2



4. Retailers and manufacturers of bedding sheet sets, including At Home, commonly and consistently communicate to consumers that higher thread count bed sheets are softer, more comfortable, and of an overall higher quality than those with a lower thread count.

5. For example, At Home describes its Luxury Sheets as "Silky Soft Sateen Weave" on its packaging and/or labeling.[6]

6. Inaccurate thread counts create reasonable but mistaken beliefs by consumers about the quality, durability, and longevity of sheet sets and fabrics. As an example, a reasonable consumer will believe that a set of bed sheets which represent on the label and packaging that they are 1000 thread count will actually include a set of bed sheets with a thread count of 1000 according to an

---

[6] *See 6-Piece Jojoba Yellow 1000 Thread Count Cotton Blend Sheet Set, King*, At Home, https://www.athome.com/6-piece-jojoba-yellow-1000-thread-count-cotton-blend-sheet-set-king/124372425.html?dwvar_M124372515_new-bedding-size=AI&nav=search_recent (last visited Aug. 7, 2023).

3

honest count, consistent with accepted industry standards. Consumers will also believe that the 1000 thread count sheets are of a higher quality than lower thread count sheet sets.[7]

7. Consumers regularly and commonly rely on the representations made on a product's labeling and packaging when determining whether or not to purchase that product. When purchasing sheet sets, consumers use the product's thread count as a primary indicator of their quality, durability, and softness and pay higher prices for those with higher thread counts.

8. In an effort to make the Luxury Sheets more attractive in the marketplace, to boost its sales, and to increase its profits, At Home represented, and continues to represent, an inflated thread count of 1000 directly on its Luxury Sheets' label and packaging. In doing so, At Home departed from longstanding and well-established industry standards that govern the method for counting threads in a fabric. In reality, the thread count of At Home's Luxury Sheets is far less than 1000.

9. This false and misleading representation deceives consumers into believing they are purchasing a product of a higher quality, durability, and softness than products of the same or substantially similar blends with lower thread counts.

---

[7] *See* P. Praditbatuga & N. Thirakomen, *Factors Influencing Consumer Purchase Intention Towards Imported Bedding Brands*, 3 eJournal of Interdisciplinary Rsch. 235, 239 (2018), http://www.assumptionjournal.au.edu/index.php/eJIR/article/view/4180/2469 ("respondents strongly agreed that all the attributes of imported bedding brands in this study (price, color, style, brand name, fiber content, package set, fabric type, and ***thread count***) were important to their decision to purchase imported bedding brands" (emphasis added)); *see also* Jackie Reeve, *What Is a Good Thread Count for Sheets?*, N.Y. Times (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/good-thread-count-for-sheets/ (Shannon Maher, chairperson and assistant professor of Home Products Development department at the Fashion Institute of Technology, stated manufacturers increase thread count because consumers assume higher thread count is better).

10. Because of the improperly inflated thread counts that At Home represented on the packaging and labeling of the Luxury Sheets, in purchasing these sheets, Plaintiffs and the putative classes received far less than what At Home promised them.

11. Moreover, as a direct result of At Home's deceptive and unconscionable misrepresentation of its Luxury Sheets' thread count, Plaintiffs and putative class members were induced to purchase the Luxury Sheets and would not have purchased them, or would have paid a lower price for them, had they known the actual thread count at the time of purchase.

## PARTIES

12.    Plaintiff Amal Talib is an Illinois citizen who, at all times material hereto, was a resident of Orland Hills, Illinois. As discussed in more detail in Paragraphs 44-47, in or around 2022, while a resident of Orland Hills, Illinois, Ms. Talib purchased At Home's Luxury Sheets (King size) from an At Home location in Crestwood, Illinois for approximately $59.00 or $69.00 based on At Home's representation of its thread count as 1000. Plaintiff Talib would not have purchased the sheets, or alternatively would not have paid a premium for it, had At Home not made this misrepresentation.

13.    Plaintiff Patricia Thompson is an Ohio citizen who, at all times material hereto, was a resident of Madison, Ohio. As discussed in more detail in Paragraphs 44-47, in or around November 2022, while a resident of Madison, Ohio, Ms. Thompson purchased At Home's Luxury Sheets (Queen size) from an At Home location in Mentor, Ohio for approximately $54.99 based on At Home's representation of its thread count as 1000. Plaintiff Thompson would not have purchased the sheets, or alternatively would not have paid a premium for it, had At Home not made this misrepresentation.

14.     Defendants At Home Group Inc. and At Home Procurement Inc. are corporations organized under the laws of the State of Delaware. Defendant At Home Stores LLC is a Delaware limited liability corporation. The principal places of business of Defendants At Home Group Inc., At Home Procurement Inc., and At Home Stores LLC (collectively, "At Home") are located in Plano, Texas. At Home is in the business of, among other things, marketing and selling furniture and home goods, including the at-issue Luxury Sheets to consumers across the United States, including in Illinois.

## JURISDICTION & VENUE

15.     This Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.SC § 1332(d)(2)(A), because there are 100 or more class members; at least one class member is a citizen of a state that is diverse from At Home's citizenship; and the matter in controversy exceeds $5 million, exclusive of interests and costs.

16.     This Court has personal jurisdiction over At Home because At Home operates, conducts, and engages in substantial business in this District, including but not limited to the promotion, sale, marketing and distribution of its Luxury Sheets; At Home committed tortious acts in this State through its misrepresentations related to the sale, marketing, and distribution of its Luxury Sheets in this State; At Home caused injury to persons within this State; and a substantial portion of the actions giving rise to the claims took place in this State.

17.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because At Home conducts business in this District and has availed itself of the laws and markets of this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

18.     Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

**A.    At Home markets and sells its Luxury Sheets at At Home locations throughout the U.S.**

19.    At Home operates retail stores throughout the State of Illinois and across the United States. At Home is a "Home and Holiday Superstore" that "offers up to 45,000 on-trend home products to fit every room, style, budget or season."[8] In 2020, the company made approximately $1.7 billion in revenue and $77 million in net income.[9]

20.    At Home markets and sells items across myriad departments, including furniture, décor and pillows, rugs and curtains, wall décor, kitchen and dining, bedding and bath, storage and cleaning essentials, outdoor, and seasonal and gifts.[10] Its "Bedding & Bath" department sells bedding, throw pillows, throw blankets and bathroom-related products.[11]

21.    At Home owns, operates, and sells merchandise under the "at home" brand to its customers in Illinois, Ohio, and throughout the United States.

22.    At Home sells its Luxury Sheets to consumers with a represented thread count of 1000 in its retail locations at or around the following prices:

   a.   The "Queen" set of Luxury Sheets retails for $54.99; and

---

[8] *At Home Announces Completion of $200 Million Private Placement and Related Transactions*, Business Wire (May 12, 2023) https://www.businesswire.com/news/home/20230512005443/en/At-Home-Announces-Completion-of-200-Million-Private-Placement-and-Related-Transactions.

[9] *At Home Group Inc. Announces First Quarter Fiscal 2022 Financial Results*, Business Wire (June 2, 2021), https://www.businesswire.com/news/home/20210602005407/en/At-Home-Group-Inc.-Announces-First-Quarter-Fiscal-2022-Financial-Results.

[10] *Shop By Department*, At Home, https://www.athome.com/departments/ (last visited Aug. 7, 2023).

[11] *Bed & Bath*, At Home, https://www.athome.com/bed-bath/?icid=02062 (last visited Aug. 7, 2023).

b.  The "King" set of Luxury Sheets retails for $59.99.[12]

23.  Consumers rely on the represented thread count as the gauge for the quality, durability, softness, and fitness of their bedding products. *See* Elisabeth Leamy, *False thread counts, and other things to watch out for when buying sheets*, Wash. Post (Aug. 1, 2017), https://www.washingtonpost.com/lifestyle/home/false-thread-counts-and-other-things-to-watch-out-for-when-buying-sheets/2017/07/31/c090baea-6d58-11e7-b9e2-2056e768a7e5_story.html ("higher thread counts have long been associated with softer sheets").

24.  Additionally, consumers regularly pay more for higher thread count sheets. *See Are Shoppers Short-Sheeted by Thread Count?*, ABC News (Nov. 22, 2002), https://abcnews.go.com/GMA/story?id=125380&page=1 ("A single-ply 300-count can run about $55 a set, while the 600 thread-count sheet that [Kathleen] Huddy [textile director for the Good Housekeeping Institute] claims is only a 300-count is $180 a set.").

**B.  At Home artificially inflates the thread count of its Luxury Sheets.**

25.  The common and accepted methodology in the United States' woven fabrics industry for counting threads is to count the number of threads in two directions: (1) the warp (or vertical) direction, and (2) the filling (or horizontal) direction. The sum of each determines the final thread count.

26.  To count the warp and filling threads in a woven fabric and to determine its final thread count, the textile industry uses the American Society for Testing and Materials-International

---

[12] All prices are taken from At Home's website. *See, e.g.*, *6-Piece Jojoba Yellow 1000 Thread Count Cotton Blend Sheet Set, King*, At Home, https://www.athome.com/6-piece-jojoba-yellow-1000-thread-count-cotton-blend-sheet-set-king/124372425.html?dwvar_M124372515_new-bedding-size=AI&nav=search_recent (last visited Aug. 7, 2023).

("ASTM") Standard Test Method for End (Warp) and Pick (Filling) Count of Woven Fabrics, D3775-17.[13]

27.     ASTM 3775 is a regularly updated standard with updates occurring in 2002, 2003, 2007, 2008, and 2012. The current standard, D3775-17, became effective in 2017.

28.     ASTM International is a globally recognized leader in the development and delivery of voluntary consensus standards. Today, over 12,000 ASTM standards are used around the world to improve product quality, enhance health and safety, strengthen market access and trade, and build consumer confidence. ASTM International standards are "the tools of customer satisfaction and competitiveness for companies across a wide range of markets."[14]

29.     Section 9.1.3 of ASTM D3775-17 provides instruction on counting single-ply and multi-ply yarn. The accepted methodology requires: "When two yarns are laid-in together and parallel, count each yarn separately, as a single unit, regardless of whether it is comprised of single or plied components."

30.     Previous versions of ASTM D3775 included instructions that required the same methodology for counting single-ply and multi-ply yarn in a woven fabric. ASTM D3775-03 included these instructions: "When two yarns are laid-in together and parallel, then each yarn is counted separately as single units regardless of whether they are comprised of single or plied components." ASTM D3775-03, Section 9.1.4.1. ASTM D3775-12 included these instructions: "When two yarns are laid-in together and parallel, count each yarn separately, as a single unit, regardless of whether it is comprised of single or plied components." ASTM D3775-12, Section 9.1.2.

---

[13] The designation "ASTM D3775-17" means that the standard was adopted in the year 2017.

[14] *Detailed Overview*, ASTM, https://www.astm.org/about/overview/detailed-overview.html (last visited Aug. 5, 2023).

31. However, At Home sells its Luxury Sheets with labeling that represents a substantially higher thread count than can be independently measured using the industry standard ASTM D3775-17.

32. The Federal Trade Commission ("FTC") has determined that this practice is deceptive. In response to a request by the National Textiles Association ("NTA") for a staff opinion "regarding the appropriate way to disclose fabric 'thread count' (yarns per square inch) on labels or in advertising for household textile products, such as bed sheets," the FTC determined that "we believe that consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn."[15]

33. In reaching this conclusion about the deceptive nature of misleading or false thread count representations, the FTC noted the importance of using and relying upon industry accepted methodologies for determining the applicable thread count:

> A representation about thread count, like other objective, material claims about a product, must be supported by a "reasonable basis." In determining what constitutes a reasonable basis for claims, we consider what experts in the field believe is appropriate, including whether there are relevant consensus based test procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter. If so, we give such procedures or practices great weight in determining whether the advertiser has met its substantiation burden.[16]

34. The FTC further concluded in its 2005 opinion letter that consumers should be given accurate and truthful information about a product's thread count and the way in which that thread count was reached:

> Based upon the ASTM standard . . . we believe that consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count

---

[15] Letter from James Kohm, Assoc. Dir. for Enf't, U.S. Fed. Trade Comm'n, to E. Linwood Wright, III, Chairman, Textile Bedding Comm., Nat'l Textile Ass'n (Aug. 2, 2005), https://www.idfl.com/wp-content/uploads/2021/05/IDFL_Textiles_-_Thread_Count_FTC_Opinion_Letter.pdf.

[16] *Id.*

by the number of plies within the yarn. A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example: "300 thread count, 2 ply yarn." A representation of "600 thread count" for this same product would likely mislead consumers about the quality of the product being purchased."[17]

35.     In 2017, the United States International Trade Commission ("ITC") issued a general exclusion order "prohibiting the entry of certain woven textile fabrics and products containing same that are falsely advertised through a misrepresentation of thread count."[18]

36.     As part of its *Woven Textile* investigation, the ITC found "a widespread pattern of violation of Section 337" because of the importation and sale of "products that have claimed a higher thread count than actually contained in the products per testing performed under the ATSM D3775 standard." *In the Matter of Certain Woven Textile Fabrics and Products Containing Same*, Order No. 21, November 10, 2016, at 17, *available at* https://www.itcblog.com/images/order21in976.pdf.

37.     At Home represents that its Luxury Sheets are 1000 thread count, but when measured in accordance with the industry standard, ASTM 3775, the thread count for the Luxury Sheets is far less.

38.     At Home developed the labeling, packaging, and representations for its Luxury Sheets, including the specific representation and warranty that the Luxury Sheets were 1000 thread count (*e.g.*, "1000 THREAD COUNT" or "1,000 TC"), which At Home knew or should have known were false and/or misleading to consumers.

---

[17] *Id.*

[18] *See In the Matter of Certain Woven Textile Fabrics and Products Containing Same*, Investigation No. 337-TA-976 (Rescission), U.S. Int'l Trade Comm'n (Mar. 4, 2021), *available at* https://www.usitc.gov/secretary/fed_reg_notices/337/337_976_notice03042021sgl.pdf.

39.    At Home knew or should have known that its represented thread count for its Luxury Sheets is false and misleading, given the accepted industry standard as well as publicity of the same.[19]

40.    In sum, At Home's representations regarding the thread counts of its Luxury Sheets were deceptive and misleading according to both the industry standard and the FTC's guidelines for accurately describing thread counts.

41.    Further, At Home knew or had reason to know that the thread count represented on the Luxury Sheets was false and deceptive because the prices for the Luxury Sheets are lower than those for authentic bed sheets of the same or substantially similar blends with the advertised thread counts.

42.    Despite this, At Home sold the Luxury Sheets with the inflated thread count in order to obtain more business and sell more products in a competitive market.

43.    By improperly inflating the thread count of its Luxury Sheets, At Home has engaged in a deceptive, unconscionable, and fraudulent practice to induce Plaintiffs and the putative classes to purchase the Luxury Sheets at an inflated price. Had Plaintiffs or the putative class members known of the inflated thread count on At Home's Luxury Sheets, they would not have purchased them or would have only paid a lower price for the Product.

---

[19] *See, e.g.*, Dru Sefton, *Some sheets have inflated thread count*, Seattle Times (Dec. 25, 2005), https://www.seattletimes.com/life/some-sheets-have-inflated-thread-count/ ("Instead of using one count per thread, some [companies] are counting individual yarn plies that make up each thread."); *Higher thread count doesn't guarantee better sheets There's no need to pay high prices for a higher thread count*, Consumer Reps. (Sept. 13, 2013), https://www.consumerreports.org/cro/news/2013/09/higher-thread-count-doesn-t-guarantee-better-sheets/index.htm ("manufacturers use thinner strands of fabric twisted together as if they were one" and then inflate the thread count "to make the number more attractive to the consumer").

## PLAINTIFFS' PURCHASES OF AT HOME'S LUXURY SHEETS

44.     In or around 2022, while a resident of Orland Hills, Illinois, Plaintiff Amal Talib purchased At Home's Luxury Sheets (King size) from an At Home location in Crestwood, Illinois for approximately $59.00 or $69.00. Plaintiff Talib would not have purchased the Luxury Sheets, or alternatively would not have paid a premium for it, had she known that the Product did not have a thread count of 1000.

45.     In or around November 2022, while a resident of Madison, Ohio, Plaintiff Patricia Thompson purchased At Home's Luxury Sheets (Queen size) from an At Home location in Mentor, Ohio for approximately $54.99. Plaintiff Thompson would not have purchased the Luxury Sheets, or alternatively would not have paid a premium for it, had she known that the Product did not have a thread count of 1000.

46.     Accordingly, Plaintiffs, and all Class and Subclass members (defined below), lost money as a result of At Home's omissions and misrepresentations regarding At Home's Luxury Sheets. Alternatively, they did not receive the benefit-of-their-bargain and instead, received a product that was worth far less than the product as was represented.

47.     If At Home is allowed to continue selling its Luxury Sheets with the deceptive and unfair misrepresentation as to its thread count, described herein, reasonable consumers will continue to be induced into purchasing the Product with the reasonable belief that its thread count is 1000.

## CLASS ALLEGATIONS

48.     Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

49.     This action is brought and may properly proceed as a class action pursuant to Federal Rule of Civil Procedure 23.

50.    Plaintiffs Amal Talib and Patricia Thompson seek certification of a class (the "Class") that is composed of and defined as follows:

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Luxury Sheets[20] from Defendants At Home Group Inc., At Home Stores LLC, and/or At Home Procurement Inc. in an At Home store located in the United States.

51.    Plaintiff Amal Talib seeks certification of an Illinois Subclass that is composed of and defined as follows:

> All persons in Illinois who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Luxury Sheets from Defendants At Home Group Inc., At Home Stores LLC, and/or At Home Procurement Inc. in an At Home store located in the State of Illinois.

52.    Plaintiff Patricia Thompson seeks certification of an Ohio Subclass that is composed of and defined as follows:

> All persons in Ohio who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Luxury Sheets from Defendants At Home Group Inc., At Home Stores LLC, and/or At Home Procurement Inc. in an At Home store located in the State of Ohio.

53.    Excluded from the Class, Illinois Subclass, and Ohio Subclass (collectively, the "Classes") are At Home's officers and directors and current or former employees of At Home and their immediate family members, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and staff.

54.    **Ascertainability**. Plaintiffs are informed and believe that the identities of members of the Classes are ascertainable through At Home's records.

---

[20] "Luxury Sheets" are the bed sheet sets that At Home manufactures, labels, distributes, advertises, and sells under its exclusively owned brand name "at home" at At Home locations throughout the country and for which At Home represents directly on their packaging and/or labeling that their thread count is 1000. *See supra* ¶ 3.

55.     **Numerosity**. The Class and Subclasses number over one-hundred (100) persons and are so numerous that joinder of all members is impracticable. The exact number of members can be readily determined from information in the possession and control of At Home.

56.     **Commonality and Predominance**. At Home has engaged in the same conduct regarding all of the other members of the Classes. The injuries and damages to these class members also present questions of law and fact that are common to each class member, and that are common to the Classes as a whole and will drive the litigation and predominate over any questions affecting only individual class members. Numerous common issues of fact and law exist, including, without limitation:

   a.   Whether At Home's Luxury Sheets have a thread count of 1000 according to accepted industry standards;

   b.   Whether At Home engaged in omissions or misrepresentations regarding the thread count of its Luxury Sheets;

   c.   Whether At Home's conduct is likely to deceive an objectively reasonable consumer;

   d.   Whether At Home's omissions and misrepresentations regarding the thread count of its Luxury Sheets constitute unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act;

   e.   Whether At Home's direct representation that its Luxury Sheets are 1000 thread count (*e.g.*, "1000 THREAD COUNT" or "1,000 TC") on its packaging and/or labeling constitutes an express warranty;

   f.   Whether At Home has been unjustly enriched;

g.  Whether Plaintiffs and the Class and Subclass members were harmed by At Home's omissions or misrepresentations regarding the thread count of its Luxury Sheets;

h.  Whether At Home should be required to make restitution to Plaintiffs and the Classes;

i.  Whether At Home should be required to pay damages to Plaintiffs and the Classes; and

j.  Whether exemplary or punitive damages should be assessed against At Home.

57.  **Typicality**. The claims, defenses, and injuries of the representative Plaintiffs are typical of the claims, defenses, and injuries of all those in the Class and Illinois and Ohio Subclasses that they respectively represent, and the claims, defenses, and injuries of each class member are typical of those of all other members in the respective classes. Plaintiffs' claims all arise from At Home's practice of inflating the thread count of its Luxury Sheets on their packaging and/or labeling. This practice is applicable to all Class and Subclass members.

58.  **Adequacy**. Plaintiffs are all members of the Class and will fully and adequately protect and represent the interests of those Class members because there are no conflicts between Plaintiffs and those Class members, and because Plaintiffs' counsel has the experience and skill to zealously advocate for the interests of the Class members. Plaintiffs Talib is a member of the Illinois Subclass and will fully and adequately represent the interests of those Subclass members. Plaintiff Thompson is a member of the Ohio Subclass and will fully and adequately represent the interests of those Subclass members.

59.  **Superiority**. There are substantial benefits to proceeding as a class action that render proceeding as the Classes superior to any alternatives, including that it will provide a

16

realistic means for members of the Classes to recover damages; the damages suffered by members of the Classes may be relatively small; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many members of the Classes may be unaware that they have legal recourse for the conduct alleged herein; and issues common to members of the Classes can be effectively managed in a single proceeding. Further, maintenance of this suit as a class action is the superior means of disposing of the common questions which predominate herein. Individualized litigation presents a potential for inconsistent or contradictory judgments as well as substantial risk of adjudication with respect to individual members of each respective class which, as a practical matter, would be dispositive of the interests of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect these interests. Plaintiffs know of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

## CLAIMS

**FIRST CLAIM FOR RELIEF**
**Illinois Consumer Fraud and Deceptive Business Practices Act**
**Misrepresentation and/or Omission**
**On Behalf of the Illinois Subclass**

60.     Plaintiff Amal Talib realleges and incorporates herein all previous paragraphs of this Complaint.

61.     Plaintiff Talib brings this claim on behalf of herself and the Illinois Subclass.

62.     At all times relevant hereto, Plaintiff Talib, the Illinois Subclass members, and At Home were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations. 815 Ill. Comp. Stat. 505/1(c).

63.     Plaintiff Talib and the Illinois Subclass members are also consumers as defined in 815 Ill. Comp. Stat. 505/1(e).

17

64.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits "unfair or deceptive acts or practices . . . with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce[.]" 815 Ill. Comp. Stat. 505/2.

65.     Under the ICFA, "trade" or "commerce" is the "advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 Ill. Comp. Stat. 505/1(f).

66.     At all times relevant hereto, At Home engaged in the advertising, offering for sale, sale, and/or distribution of property.

67.     Plaintiff Talib and the Illinois Subclass members purchased the Luxury Sheets at issue herein for their use or that of members of their households.

68.     The ICFA, 815 Ill Comp. Stat. 505/1, *et seq.*, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

69.     At Home, by and through its employees, agents, and/or servants, engaged in unlawful schemes and courses of conduct with regard to the sale and marketing of its Luxury Sheets through the misrepresentation on the Product's packaging and/or labeling that the Product had a thread count of 1000 when its actual thread count is far lower as well as the omission, suppression, and/or concealment from Plaintiff Talib and the Illinois Subclass of the actual thread

count. At Home thus misrepresented the quality of the Product and deceived Plaintiff Talib and the Illinois Subclass.

70.     The fact that At Home misrepresented, concealed, suppressed, or omitted, as alleged above, was material in that thread count is the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase the Luxury Sheets.

71.     At Home's misconduct, including its misrepresentations and omission of material facts alleged herein, took place in connection with At Home's course of trade or commerce in Illinois, arose out of transactions that occurred in Illinois, and/or harmed individuals located in Illinois.

72.     At Home engaged in such unlawful course of conduct with the intent to induce Plaintiff Talib and the Illinois Subclass members to purchase the Luxury Sheets and pay premiums above those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

73.     Plaintiff Talib and the Illinois Subclass members were damaged by such conduct in that they were charged premiums different and higher than those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

74.     The deceptive acts and/or practices of At Home alleged herein occurred in connection with At Home's conduct of trade and commerce in Illinois.

75.     At Home intended for Plaintiff Talib and the Illinois Subclass members to purchase its Luxury Sheets in reliance on At Home's deceptive acts and/or practices.

76.     Plaintiff Talib and the Illinois Subclass members would not have purchased the Luxury Sheets, or alternatively would not have paid a premium for them, had At Home not misrepresented their thread count as 1000.

77.     The deceptive acts and/or practices of At Home violate the ICFA, 815 Ill Comp. Stat. 505/2.

78.     As a direct and proximate result of the deceptive acts and/or practices of At Home, Plaintiff Talib and the Illinois Subclass were damaged in that they did not receive the benefit of their bargain and paid premiums above those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

79.     Plaintiff Talib and the Illinois Subclass members request that this Court enjoin At Home from continuing to violate the ICFA as discussed herein. Plaintiff Talib and the Illinois Subclass members also seek all damages permitted by law, including compensation for the monetary difference between the Luxury Sheets as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, prejudgment interest, attorneys' fees, and all other relief permitted by law.

**SECOND CLAIM FOR RELIEF**
**Illinois Consumer Fraud and Deceptive Business Practices Act**
**Unfairness**
**On Behalf of the Illinois Subclass**

80.     Plaintiff Amal Talib realleges and incorporates herein all previous paragraphs of this Complaint.

81.     Plaintiff Talib brings this claim on behalf of herself and the Illinois Subclass.

82.     Plaintiff Talib brings this Claim in the alternative to the First Claim for Relief.

83.     At all times relevant hereto, Plaintiff Talib, the Illinois Subclass members, and At Home were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations. 815 Ill. Comp. Stat. 505/1(c).

84.     Plaintiff Talib and the Illinois Subclass members are also consumers as defined in 815 Ill. Comp. Stat. 505/1(e).

85.     The ICFA prohibits "unfair or deceptive acts or practices . . . with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce[.]" 815 Ill. Comp. Stat. 505/2.

86.     Under the ICFA, "trade" or "commerce" is the "advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 Ill. Comp. Stat. 505/1(f).

87.     At all times relevant hereto, At Home engaged in the advertising, offering for sale, sale, and/or distribution of property.

88.     Plaintiff Talib and the Illinois Subclass members purchased the Luxury Sheets at issue herein for their use or that of members of their households.

89.     The ICFA, 815 Ill Comp. Stat. 505/1, *et seq.*, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

90.     At Home, by and through its employees, agents, and/or servants, engaged in unlawful schemes and courses of conduct with regard to the sale and marketing of its Luxury Sheets by unfairly representing on the Product's packaging and/or labeling that the Product had a thread count of 1000 when its actual thread count is far lower. At Home engaged in such unlawful course of conduct with the intent to induce Plaintiff Talib and the Illinois Subclass members to purchase its Luxury Sheets and pay premiums above those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

91.     At Home's acts or practices were "unfair" as they offend public policy, are immoral, unethical, oppressive, or unscrupulous, and/or cause substantial injury to consumers.

92.     At Home's acts or practices offend the clearly stated public policy prohibiting false advertising in its misrepresenting the thread count of its Luxury Sheets as set forth in, *inter alia*, the Federal Trade Commission Act, which prohibits unfair methods of competition, and unfair or deceptive acts or practices in or affecting commerce, which includes, *inter alia*, false advertising, *see* 15 U.S.C. § 45(a)(1); *see also* 16 C.F.R. § 238.2(a) ("No statement . . . should be used in any advertisement which creates a false impression of the grade, quality, make, value . . . of the product offered"), the Federal Trade Commission's 2005 staff opinion regarding inflated thread counts (*supra* ¶ 32), and the United States International Trade Commission's 2017 general exclusion order prohibiting entry of certain products that misrepresent thread count (*supra* ¶ 35).

93.     At Home's acts or practices are immoral and unethical as they serve only to benefit At Home to the detriment of the consuming public.

94.     At Home's acts or practices were likely to cause, and did cause, substantial injury to consumers as they resulted in At Home receiving revenue to which At Home is not entitled. The injuries caused by At Home's acts or practices, namely consumers' monetary losses, are not outweighed by any countervailing benefit to consumers or competition. At Home's unfair acts served no purpose other than to increase its own profits.

95.     These injuries were not reasonably avoidable. Because At Home was the sole source of material information that At Home failed to disclose, consumers could not have had reason to anticipate the impending harm and thus avoid their injuries.

96.     Upon information and belief, At Home knew or should have known that, by representing on its Luxury Sheets' packaging and/or labeling that the Product had a thread count

of 1000, they were charging premiums to Plaintiff Talib and the Illinois Subclass above those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

97.     At Home knew or should have known that its representation of the Luxury Sheets' thread count as 1000 was not based on accepted industry standards.

98.     Plaintiff Talib and the Illinois Subclass members were damaged by such conduct in that they were charged premiums different and higher than those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

99.     At Home's unfair acts and/or practices alleged herein took place in connection with At Home's course of trade or commerce in Illinois, arose out of transactions that occurred in Illinois, and/or harmed individuals located in Illinois.

100.     At Home intended for Plaintiff Talib and the Illinois Subclass members to purchase its Luxury Sheets in reliance on At Home's unfair acts and/or practices.

101.     The fact that At Home represented the thread count of its Luxury Sheets as 1000 was material in that thread count is the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase the Luxury Sheets.

102.     Plaintiff Talib and the Illinois Subclass members would not have purchased the Luxury Sheets, or alternatively would not have paid a premium for them, had At Home not misrepresented their thread count as 1000.

103.     The unfair acts and/or practices of At Home violate ICFA, 815 Ill. Comp. Stat. 505/2.

104.     As a direct and proximate result of the unfair acts and/or practices of At Home, Plaintiff Talib and the Illinois Subclass were damaged in that they did not receive the benefit of

their bargain and paid premiums above those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

105.    Plaintiff Talib and the Illinois Subclass members request that this Court enjoin At Home from continuing to violate the ICFA as discussed herein. Plaintiff Talib and the Illinois Subclass members also seek all damages permitted by law, including compensation for the monetary difference between the Luxury Sheets as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, prejudgment interest, attorneys' fees, and all other relief permitted by law.

**THIRD CLAIM FOR RELIEF**
**Breach of Express Warranty**
**On Behalf of the Classes**

106.    Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

107.    Plaintiffs bring this claim on behalf of themselves and the Classes.

108.    Plaintiffs, and each member of the putative Classes, purchased the Luxury Sheets from At Home.

109.    In connection with those purchases, At Home made promises and affirmations of fact on the packaging and/or labeling of the Luxury Sheets, as alleged above.

110.    At Home's promises and affirmations of fact made through and represented on its Luxury Sheets' packaging and/or labeling constitute express warranties.

111.    The written express warranty on the Product's packaging includes the direct representation that the Luxury Sheets are 1000 thread count (*e.g.*, "1000 THREAD COUNT" or "1,000 TC").

112.    This affirmation of fact made by At Home was made to induce Plaintiffs and the putative Class and Illinois and Ohio Subclass members to purchase the Luxury Sheets.

113.    Alternatively, At Home's representations, descriptions, and specifications of the quality, durability, longevity, and fitness of their Luxury Sheets, namely that the bed sheets were 1000 thread count, became part of the basis of the bargain, creating express written warranties that the Products purchased by Plaintiffs and the putative Classes would conform to those representations, descriptions, and specifications.

114.    Plaintiffs and the putative Class and Illinois and Ohio Subclass members relied on At Home's affirmation of fact that the Luxury Sheets were 1000 thread count when purchasing the Product.

115.    Plaintiffs and the putative Class and Illinois and Ohio Subclass members would not have purchased the Luxury Sheets, or alternatively would not have paid a premium for them, had At Home not misrepresented their thread count as 1000.

116.    All conditions precedent to At Home's liability under the warranty have been performed by Plaintiffs and the putative Class and Illinois and Ohio Subclass members or have been waived.

117.    At Home breached the terms of the express warranty because the Products did not conform to the description provided by At Home, to wit: that the Luxury Sheets were 1000 thread count.

118.    Plaintiffs and the putative Class and Illinois and Ohio Subclass members were injured as a result of At Home's breach of their express warranties about the Luxury Sheets.

119.    As a result of the foregoing, Plaintiffs and the putative Class and Illinois and Ohio Subclass members have suffered damages in that the value of the Luxury Sheets that they purchased was less than warranted by At Home.

120.    Plaintiffs and the members of the Classes seek all damages permitted by law, including compensation for the monetary difference between the Luxury Sheets as warranted and as sold, incidental and consequential damages, in an amount adequate to deter such conduct in the future, attorneys' fees, and all other relief permitted by law.

**FOURTH CLAIM FOR RELIEF**
**Common Law Fraud**
**On Behalf of the Classes**

121.    Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

122.    Plaintiffs bring this claim on behalf of themselves and the Classes.

123.    At Home represented to Plaintiffs and all putative Class and Illinois and Ohio Subclass members on the Luxury Sheets' labeling and/or packaging that the Luxury Sheets had a thread count of 1000 when the actual thread count was far lower.

124.    At Home knew, or should have known, that the misrepresentation alleged herein was false at the time it made the misrepresentation and/or it acted recklessly in making such a misrepresentation.

125.    At Home's misrepresentation of the thread count on its Luxury Sheets' labeling and/or packaging was material to consumers because the representation was directly relevant to the value and quality of the Products.

126.    At Home intended that Plaintiffs and the putative Class and Illinois and Ohio Subclass members rely on the misrepresentations alleged herein and purchase the Luxury Sheets.

127.    Plaintiffs and the putative Class and Illinois and Ohio Subclass members reasonably and justifiably relied on At Home's misrepresentations when purchasing the Luxury Sheets, were unaware of the existence of facts that At Home suppressed and failed to disclose, and, had the facts been known, would not have purchased the Products and/or would not have purchased them at the prices at which they were offered.

128.    Plaintiffs and the Class and Illinois and Ohio Subclass members seek all damages permitted by law, including compensation for the monetary difference between the Luxury Sheets as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, attorneys' fees, and all other relief permitted by law.

### FIFTH CLAIM FOR RELIEF
**Negligent Misrepresentation**
**On Behalf of the Class and the Illinois Subclass**

129.    Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

130.    Plaintiffs bring this claim on behalf of themselves and the Class and the Illinois Subclass.

131.    At Home, directly or through its agents and employees, falsely represented that the Luxury Sheets were 1000 thread count when the actual thread count was far lower.

132.    At Home's misrepresentation related to the thread count of the Luxury Sheets was a misrepresentation of a material fact made directly to Plaintiffs and the Class and Illinois Subclass members on the Product's packaging and/or labeling, as described above.

133.    At Home had no reasonable grounds for believing these representations to be true when it made them.

134.    In making these representations, At Home intended to induce the reliance of Plaintiffs and the Class and Illinois Subclass members.

135.    Plaintiffs and Class and Illinois Subclass members reasonably and justifiably relied on At Home's misrepresentations when purchasing the Products and, had the facts been known, they would not have purchased the Products and/or would not have purchased them at the prices at which they were offered.

136.    As a direct and proximate result of At Home's negligent misrepresentations, Plaintiffs and the Class and Illinois Subclass members have been damaged in an amount to be

established at trial including compensation for the monetary difference between the Luxury Sheets as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, attorneys' fees, and all other relief permitted by law.

### SIXTH CLAIM FOR RELIEF
#### Unjust Enrichment
#### On Behalf of the Classes

137. Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

138. Plaintiffs bring this claim on behalf of themselves and the Classes.

139. This claim asserts that it is unjust to allow At Home to retain profits from its deceptive, misleading, and unlawful conduct alleged herein.

140. At Home charged Plaintiffs and the Class and Illinois and Ohio Subclass members for the Luxury Sheets that At Home represented were 1000 thread count.

141. As detailed above, the Luxury Sheets do not have a thread count of 1000 and, instead, have a far lower thread count.

142. Plaintiffs and the putative Class and Illinois and Ohio Subclass members would not have purchased the Luxury Sheets, or alternatively would not have paid a premium for them, had At Home not misrepresented their thread count as 1000.

143. Because the Luxury Sheets misrepresented their thread count, At Home collected profit for this misrepresentation.

144. As a result of these actions, At Home received benefits under circumstances where it would be unjust to retain these benefits.

145. At Home has knowledge or an appreciation of the benefit conferred upon it by Plaintiffs and the putative Class and Illinois and Ohio Subclass members.

146. At Home has been unjustly enriched.

147.  Plaintiffs and the Class and Illinois and Ohio Subclass members are entitled to restitution and/or disgorgement of all profits, benefits, and other compensation obtained and retained by At Home from its deceptive, misleading, and unlawful conduct including compensation for the monetary difference between the Luxury Sheets as warranted and as sold.

### PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs demand judgment as follows:

1.  For an Order determining at the earliest possible time that this matter may proceed as a class action under Federal Rule of Civil Procedure 23 and certifying this case as such;

2.  For compensatory damages, restitution, and/or recovery of such relief as permitted by law in kind and amount;

3.  For punitive damages pursuant to common law and/or statutory law;

4.  For reasonable costs and attorneys' fees necessarily incurred herein pursuant to common law and/or statutory law;

5.  For trial by jury on all issues; and

6.  For such other or further relief as this Honorable Court deems Plaintiffs and the putative Classes are entitled.

Date: September 1, 2023

  *Andrea R. Gold*
  Andrea R. Gold (Bar No. 6282969)
  *agold@tzlegal.com*
  Leora N. Friedman (*pro hac vice* forthcoming)
  *lfriedman@tzlegal.com*
  **TYCKO & ZAVAREEI LLP**
  2000 Pennsylvania Avenue NW
  Suite 1010
  Washington, D.C. 20006
  Telephone: (202) 973-0900
  Facsimile: (202) 973-0950

Frank Bartela (*pro hac vice* forthcoming)
*fbartela@dworkenlaw.com*
Nicole T. Fiorelli (*pro hac vice* forthcoming)
*nfiorelli@dworkenlaw.com*
**DWORKEN & BERNSTEIN**
60 South Park Place
Painesville, OH 44077
Telephone: (440) 352-3391

*Counsel for Plaintiffs Amal Talib and Patricia Thompson*