**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| AMAL TALIB and PATRICIA THOMPSON, individually and as a representative of all others similarly situated,<br><br> Plaintiffs,<br><br>v.<br><br>AT HOME GROUP INC., AT HOME STORES LLC, and AT HOME PROCUREMENT INC.,<br><br> Defendants. | Civil No. 1:23-cv-06807<br>District Judge: Jeffrey I. Cummings<br>Magistrate Judge: Sheila M. Finnegan |

**DEFENDANTS AT HOME GROUP INC., AT HOME STORES LLC, AND**
**AT HOME PROCUREMENT INC.'S MOTION TO DISMISS**
**THE COMPLAINT & MEMORANDUM OF LAW**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ALLEGATIONS OF THE COMPLAINT ..................................................................... 1

      A.     At Home's Luxury Sheets ....................................................................... 1

      B.     Plaintiffs' Purchases ............................................................................... 2

      C.     Plaintiffs' Claims ................................................................................... 3

LEGAL STANDARD ...................................................................................................... 4

ARGUMENT .................................................................................................................. 5

I.      This Court Lacks Personal Jurisdiction over Plaintiff Thompson's Claims. ..................... 5

II.     Plaintiffs' Failure to Identify the Sheets They Purchased Requires Dismissal of Their Claims ................................................................................................. 7

III.    Plaintiffs Do Not Allege Sufficient Facts to Support Their Conclusory Allegation That the Bed Sheets Have an Inflated Thread Count. ........................................... 8

IV.    Plaintiffs Do Not Sufficiently Allege Actual Damages. ..................................... 11

V.     Plaintiffs' Unjust Enrichment Claim Fails Along with Their Fraud Claims. .................. 13

VI.    Plaintiffs Fail to State a Claim for Breach of Express Warranty. .................................. 13

VII.   Plaintiffs' Request for Injunctive Relief Should Be Denied. ........................................ 15

CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. AQ Textiles LLC*,
  2021 WL 3475677 (M.D.N.C. Aug. 6, 2021)............................................................10, 11, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................4

*Bakopoulos v. Mars Petcare US, Inc.*,
  2021 WL 2915215 (N.D. Ill. July 12, 2021).....................................................5, 6, 7

*Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse
  Corp.*,
  2014 WL 4054240 (S.D.N.Y. Aug. 15, 2014)................................................10, 14

*Beckman v. Arizona Canning Co., LLC*,
  2017 WL 4227043 (S.D. Cal. Sept. 21, 2017).........................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................4

*Benson v. Fannie May Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) .................................................................................5

*Biesterfeld v. Ariosa Diagnostics, Inc.*,
  2022 WL 972281 (N.D. Ill. Mar. 31, 2022)...........................................................11

*Bonahoom v. Staples, Inc.*,
  2021 WL 1020986 (N.D. Ill. Mar. 17, 2021)..........................................................13

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,
  582 U.S. 255 (2017)................................................................................................6

*Calderon v. Procter & Gamble Co.*,
  --- F. Supp. 3d ---, 2023 WL 3627797 (N.D. Ill. May 24, 2023)........................7, 15

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) .............................................................................5, 15

*Chiappetta v. Kellogg Sales Co.*,
  2022 WL 602505 (N.D. Ill. Mar. 1, 2022)..............................................................13

*Cowen v. Lenny & Larry's, Inc.*,
  2017 WL 4572201 (N.D. Ill. Oct. 12, 2017)............................................................7

*Doe v. Columbia Coll. Chi.*,
  933 F.3d 849 (7th Cir. 2019) ...................................................4

*Dolch v. Linen Source Inc.*,
  2008 WL 11336301 (M.D. Fla. Jan. 3, 2008)............................9

*Frye v. L'Oreal USA, Inc.*,
  583 F. Supp. 2d 954 (N.D. Ill. 2008) .....................................12

*Fullerton v. Corelle Brands, LLC*,
  2019 WL 4750039 (N.D. Ill. Sept. 30, 2019) ............................6

*Hawes v. Macy's Inc.*,
  346 F. Supp. 3d 1086 (S.D. Ohio 2018) .................................14

*Hawes v. Macy's Stores W. Inc.*,
  2022 WL 815298 (S.D. Ohio Mar. 16, 2022) ..........................15

*Hawkins v. Coca-Cola Co.*,
  --- F. Supp. 3d ---, 2023 WL 1821944 (S.D.N.Y. Feb. 7, 2023) ..............................9

*Hill v. AQ Textiles LLC*,
  2021 WL 1026740 (M.D.N.C. Mar. 17, 2021)....................9, 12

*Hill v. AQ Textiles LLC*,
  582 F. Supp. 3d 297 (M.D.N.C. 2022) ...................................14

*Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*,
  623 F. Supp. 3d 857 (N.D. Ill. 2022) .......................................4

*Ibarolla v. Nutrex Rsch., Inc.*,
  2012 WL 5381236 (N.D. Ill. Oct. 31, 2012)........................8, 13

*James v. City of Evanston*,
  2021 WL 4459508 (N.D. Ill. Sept. 29, 2021) ............................1

*Jones v. ConAgra Foods, Inc.*,
  912 F. Supp. 2d 889 (N.D. Cal. 2012) ......................................8

*Kurt v. Platinum Supplemental Ins., Inc.*,
  2021 WL 3109667 (N.D. Ill. July 22, 2021)...............................6

*Lemus v. Rite Aid Corp.*,
  613 F. Supp. 3d 1269 (C.D. Cal. 2022) ....................................9

*Martin v. Living Essentials, LLC*,
  160 F. Supp. 3d 1042 (N.D. Ill. 2016) .....................................1

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*,
  20 F.4th 311 (7th Cir. 2021) ................................................11

*McDonnell v. Nature's Way Prod., LLC*,
  2017 WL 4864910 (N.D. Ill. Oct. 26, 2017)................................6

*Media Bank, LLC v. SCOTTeVEST, Inc.*,
  2020 WL 6825691 (N.D. Ill. Nov. 20, 2020) ............................5

*Moore v. EO Prods., LLC*,
  2023 WL 6391480 (N.D. Cal. Sept. 29, 2023) .........................13

*Morrison v. Ross Stores, Inc.*,
  2018 WL 5982006 (N.D. Cal. Nov. 14, 2018) ..........................15

*Muir v. NBTY, Inc.*,
  2016 WL 5234596 (N.D. Ill. Sept. 22, 2016) ........................8, 14

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  155 F. Supp. 3d 772 (N.D. Ill. 2016) ....................................14

*Solo v. Bed Bath & Beyond, Inc.*,
  2007 WL 1237825 (D.N.J. Apr. 26, 2007) ..............................13

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010) ................................................11

*Willard v. Tropicana Mfg. Co., Inc.*,
  577 F. Supp. 3d 814 (N.D. Ill. 2021) .......................................7

**Statutes**

Ill. Comp. Stat. Ann. 5/2-607.....................................................14

Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* .........................13

Ohio Rev. Code Ann. § 1302.65..................................................14

## INTRODUCTION

Plaintiffs allege that At Home falsely advertises that its "Luxury Sheets" bed sheets have a 1,000 thread count when, according to Plaintiffs, the thread count is "far less." But Plaintiffs' entire Complaint hangs on the thinnest of reeds: a handful of conclusory allegations that, when measured in accordance with the alleged industry standard, the thread count for these sheets is less than 1,000. Plaintiffs never allege that they actually *tested* the bed sheets, much less the standard pursuant to which any such testing was performed or the results of such tests. Rules 12(b)(6) and 9(b) require more of Plaintiffs before they may proceed with this burdensome litigation, including specific factual allegations that would render plausible their threadbare claim that At Home inflates the thread count of these bed sheets. For that and the additional reasons discussed below, Plaintiffs' Complaint should be dismissed in its entirety.

## ALLEGATIONS OF THE COMPLAINT

### A.     At Home's Luxury Sheets

Plaintiffs allege that retailer At Home sells a line of "Luxury Sheets" bed sheets that are labeled as having a thread count of 1,000. *See* Compl. ¶ 3, ECF No. 1. These sheets are available in two sizes (queen and king), *see id.* ¶¶ 3–5, 22, and multiple colors.[1]

According to Plaintiffs, "[c]onsumers . . . believe that the 1000 thread count sheets are of a higher quality than lower thread count sheet sets." *Id.* ¶ 6. Because consumers may use "thread count as a primary indicator of their quality, durability, and softness," Plaintiffs allege that

---

[1] *See* At Home, *Search Results for "1000 Thread Count Sheets*," https://www.athome.com/search/?q=1000+thread+count+luxury+sheets&lang=default&start=0& sz=18 (last visited Nov. 13, 2023). "The Court may take judicial notice of the contents of a website." *Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1047 n.5 (N.D. Ill. 2016). The Court may also consider At Home's website as it is incorporated by reference in the Complaint. *See* Compl. ¶¶ 5 n.6, 22 n.12; *James v. City of Evanston*, 2021 WL 4459508, at *7 n.3 (N.D. Ill. Sept. 29, 2021).

consumers "pay higher prices for [sheets] with higher thread counts." *Id.* ¶ 7. Several sources cited in the Complaint, however, state that "honestly, thread count isn't the most important thing to consider," and that sheets with "thread counts ranging from 200 to 600" may have a better quality than sheets with higher thread counts. Jackie Reeve, *What Is a Good Thread Count for Sheets?*, N.Y. Times (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/good-thread-count-for-sheets/ (cited in Compl. ¶ 6 n.7); *see also* Elisabeth Leamy, *False Thread Counts, and Other Things to Watch out for When Buying Sheets*, Wash. Post (Aug. 1, 2017), https://www.washingtonpost.com/lifestyle/home/false-thread-counts-and-other-things-to-watch-out-for-when-buying-sheets/2017/07/31/c090baea-6d58-11e7-b9e2-2056e768a7e5_story.html (cited in Compl. ¶ 23) (reporting that "thread count is just one factor to consider," and that "higher is not always better").[2]

### B. Plaintiffs' Purchases

Plaintiff Amal Talib is allegedly an Illinois citizen who "purchased At Home's Luxury Sheets (King size)" for "approximately $59.00 or $69.00" from an At Home location in Crestwood, Illinois. *Id.* ¶ 12. Plaintiff Patrica Thompson is allegedly an Ohio citizen who "purchased At Home's Luxury Sheets (Queen size)" for "approximately $54.99" from an "At Home location in Mentor, Ohio." *Id.* ¶ 13. Both Plaintiffs allege they purchased the Luxury Sheets "based on At Home's representation of its thread count as 1000," and that they "would not have purchased the sheets, or alternatively would not have paid a premium for it, had At Home not made this misrepresentation." *Id.* ¶¶ 12–13. Plaintiffs do not allege which particular color of Luxury Sheets they purchased.

---

[2] The Court may consider these online articles, which are also incorporated by reference into the Complaint. *See supra* n.1.

According to Plaintiffs, "At Home represents that its Luxury Sheets are 1000 thread count, but when measured in accordance with the industry standard, ASTM 3775, the thread count for the Luxury Sheets is far less." *Id.* ¶ 37. But Plaintiffs do not allege any additional facts to support their claim that the Luxury Sheets have a thread count less than 1,000. They do not allege that they even tested the Luxury Sheets, much less on which products any such testing was performed, how the testing was performed, or what thread count the testing showed.

Instead, Plaintiffs refer to a 2005 opinion letter from the U.S. Federal Trade Commission ("FTC") that it may be "deceptive" for merchants to "stat[e] an inflated thread count" on their bed sheets, which they allege "noted the importance of using and relying upon industry accepted methodologies for determining the applicable thread count." *Id.* ¶¶ 32–33. Plaintiffs also cite to a since-rescinded 2017 general exclusion order from the U.S. International Trade Commission ("ITC") "prohibiting the entry of certain woven textile fabrics and products containing same that are falsely advertised through a misrepresentation of thread count." *Id.* ¶¶ 35–36. Plaintiffs do not allege that either the 2005 FTC letter or the 2017 ITC order applied to At Home's Luxury Sheets.

### C.     Plaintiffs' Claims

Plaintiffs bring claims for misrepresentations and omissions under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), *see id.* ¶¶ 60–79, unfairness under ICFA, *see id.* ¶¶ 80–105, breach of express warranty, *see id.* ¶¶ 106–20, common law fraud, *see id.* ¶¶ 121–28, negligent misrepresentation, *see id.* ¶¶ 129–36, and unjust enrichment, *see id.*

¶¶ 137–47. Plaintiffs do not identify the law—Illinois or Ohio—under which they bring their express warranty, fraud, negligent misrepresentation, and unjust enrichment claims.[3]

Plaintiffs seek certification of a class of "[a]ll persons in the United States who, within the applicable statute of limitations . . . purchased Luxury Sheets from Defendants [At Home] in an At Home store located in the United States." *Id.* ¶ 50. They also seek to certify similar subclasses of Illinois- and Ohio-based consumers. *See id.* ¶¶ 51–52.

## LEGAL STANDARD

"To survive a motion to dismiss" pursuant to Rule 12(b)(6), "the complaint must state a claim for relief that is plausible on its face." *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019) (quotation omitted). A plaintiff is required to "plead particularized factual content, not conclusory allegations, that allows the court to plausibly infer the defendant is liable for the alleged misconduct." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s heightened pleading standard, Plaintiffs "must plead the who, what, when, where, and how of the alleged fraudulent conduct, and explain why [a] statement or omission complained of was false and misleading." *Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*, 623 F. Supp. 3d 857, 884 (N.D. Ill. 2022) (quotation omitted). With

---

[3] One possible exception is Plaintiffs' negligent misrepresentation claim, which Plaintiffs bring "on behalf of themselves and the Class and the Illinois Subclass." Compl. ¶ 130. It is unclear what law Plaintiffs bring their classwide negligent misrepresentation claim under, and it is also unclear if they assert a separate negligent misrepresentation claim under Ohio law.

the exception of Plaintiffs' express warranty and unjust enrichment claims, Plaintiffs' claims sound in fraud and are subject to Rule 9(b). *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (Rule 9(b) applies to ICFA claim that rests on allegations of deceptive conduct); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (claim for "unfairness" under the ICFA is subject to Rule 9(b)); *Media Bank, LLC v. SCOTTeVEST, Inc.*, 2020 WL 6825691, at *8 (N.D. Ill. Nov. 20, 2020) (applying Rule 9(b) to negligent misrepresentation claims).

## ARGUMENT

### I.     This Court Lacks Personal Jurisdiction over Plaintiff Thompson's Claims.

Plaintiff Patricia Thompson lives in Madison, Ohio, and alleges that she bought Luxury Sheets "from an At Home location in Mentor, Ohio." Compl. ¶ 13. She appears to assert express warranty, fraud, negligent misrepresentation, and unjust enrichment claims under Ohio law, *see id.* ¶¶ 106–47, and she seeks to represent an "Ohio Subclass" consisting of "[a]ll persons in Ohio" who bought Luxury Sheets from At Home brick-and-mortar stores in Ohio. *Id.* ¶ 52. Her claims should be dismissed for lack of personal jurisdiction.

"There are two types of personal jurisdiction: general and specific." *Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021). At Home is not subject to general jurisdiction in Illinois because it is not "at home" in Illinois, and Plaintiffs do not allege otherwise. *Id.* Specific jurisdiction may lie "where the defendant has purposefully availed himself of the privilege of conducting business in the forum state, and the alleged injury arises out of the defendant's forum-related activities." *Id.* at *4 (quotation omitted). Each named plaintiff "must demonstrate personal jurisdiction over [At Home] for each of their claims." *Id.*

This Court cannot exercise specific personal jurisdiction over Ms. Thompson's claims against At Home because her alleged injuries arise out of At Home's contacts with *Ohio*, where

she purchased the sheets, not Illinois. *See* Compl. ¶ 13. There are no allegations tying Ms. Thompson's interactions with At Home to Illinois. This Court accordingly lacks specific jurisdiction over Ms. Thompson's claims. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 265 (2017) (holding that "California courts cannot claim specific jurisdiction" over claims brought by plaintiffs who "are not California residents and do not claim to have suffered harm in [California]").

In accord with *Bristol-Myers*, courts in this District regularly dismiss claims such as Ms. Thompson's that are brought by non-Illinois plaintiffs asserting non-Illinois law regarding products they purchased in a different state. *See, e.g.*, *Bakopoulos*, 2021 WL 2915215, at *4 (dismissing non-Illinois state law claims brought by non-Illinois plaintiffs because defendant "had no interaction with Illinois that was related to these purchases, so there is no specific jurisdiction over [defendant] for those claims"); *McDonnell v. Nature's Way Prod., LLC*, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (holding that an Illinois resident's purchase of defendant's product "cannot provide a basis for the Court to exercise personal jurisdiction over the claims of nonresidents where [defendant] has no other connection to this forum"). Because Ms. Thompson is the only plaintiff who appears to assert claims under Ohio law for breach of express warranty, fraud, negligent misrepresentation, and unjust enrichment, *see* Compl. ¶¶ 106–47, those causes of actions must be dismissed, *see McDonnell*, 2017 WL 4864910, at *4.[4]

---

[4] Because Ms. Thompson is the only representative of the putative Ohio subclass, *see* Compl. ¶ 52, At Home further moves under Fed R. Civ. P. 12(f) to strike the Complaint's allegations related to that subclass. *See Kurt v. Platinum Supplemental Ins., Inc.*, 2021 WL 3109667, at *7 (N.D. Ill. July 22, 2021) (where court lacks personal jurisdiction over named plaintiff's claims, it also lacks jurisdiction over classes she purports to represent); *Fullerton v. Corelle Brands, LLC*, 2019 WL 4750039, at *3 (N.D. Ill. Sept. 30, 2019) ("[I]f the claims of the putative class do not have a class representative to assert them, those claims must be dismissed.").

II.     **Plaintiffs' Failure to Identify the Sheets They Purchased Requires Dismissal of Their Claims.**

Although the 1000-thread-count Luxury Sheets are available in multiple colors, Plaintiffs do not allege which specific sheets they purchased. They nonetheless seek to represent consumers who purchased *any* type of 1000-thread-count Luxury bed sheet sold by At Home. *See* Compl. ¶¶ 50–52. Whether viewed as a question of standing or the sufficiency of Plaintiffs' allegations, their failure to allege which products they purchased dooms their claims.

Courts routinely hold that plaintiffs lack Article III standing to bring claims based on products they did not purchase, because they cannot show the requisite injury in fact stemming from such products. *See Bakopoulos*, 2021 WL 2915215, at *3 ("Plaintiffs have no injury-in-fact caused by products that they did not buy, and therefore lack standing with respect to those products."); *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 824 (N.D. Ill. 2021) ("Plaintiffs lack standing to assert claims over any Products that they *did not* actually purchase."). In one case, for example, plaintiffs brought claims regarding defendant's cookies that were "sold in two sizes and eleven different varieties." *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at *1 (N.D. Ill. Oct. 12, 2017). The court held that plaintiffs could not show they "suffered an injury in fact" with respect to "to products they did not purchase," and accordingly dismissed plaintiffs' claims as to those products. *Id.* at *3. Other cases are in accord. *See Calderon v. Procter & Gamble Co.*, --- F. Supp. 3d ---, 2023 WL 3627797, at *3 (N.D. Ill. May 24, 2023) (dismissing claims regarding Pure Zzzs Melatonin + Chamomile & Lavender Gummies, because plaintiff alleged she purchased only Pure Zzzs Nightly Sleep product). Application of that straightforward constitutional principle here requires dismissal of Plaintiffs' claims. Because Plaintiffs have not identified which color Luxury Sheets products they purchased, their claims should be dismissed under Rule 12(b)(1) for lack of Article III standing.

Plaintiffs' failure to allege which color Luxury Sheets products they purchased also leaves them unable to state any claims under Rule 12(b)(6), including with the specificity required by Rule 9(b) for their fraud-based claims. Courts routinely dismiss cases on similar facts, because "[w]ithout specifying which product[s] [plaintiffs] actually purchased," the court "cannot determine what particular misrepresentation [p]laintiff[s] relied on." *Ibarolla v. Nutrex Rsch., Inc.*, 2012 WL 5381236, at *2 (N.D. Ill. Oct. 31, 2012); *see also Beckman v. Arizona Canning Co., LLC*, 2017 WL 4227043, at *5 (S.D. Cal. Sept. 21, 2017) (holding that plaintiffs' "complaint is subject to dismissal in its entirety" under Rule 9(b) for failing to identify "which bean products Plaintiffs purchased"); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 903 (N.D. Cal. 2012) (dismissing fraud claims under Rule 9(b) regarding "other Hunt's canned tomato products" where plaintiffs only alleged they purchased "Hunt's Petite Diced Tomatoes in a 14.5 oz can and other Hunt's canned tomato products such as its tomato paste in an 8 oz. can"). Plaintiffs also fail to state an express warranty claim, since At Home "could not have warranted the quality or chemistry of a product that Plaintiff never purchased or used." *Muir v. NBTY, Inc.*, 2016 WL 5234596, at *9 (N.D. Ill. Sept. 22, 2016).

### III. Plaintiffs Do Not Allege Sufficient Facts to Support Their Conclusory Allegation That the Bed Sheets Have an Inflated Thread Count.

Plaintiffs allege generally that At Home committed "deceptive and unfair" "omissions and misrepresentations" by stating that the Luxury Sheets have a thread count of 1,000. Compl. ¶¶ 46–47. But Plaintiffs plead no *facts* to render plausible their threadbare allegation that "when measured in accordance with the industry standard, ASTM 3775, the thread count for the Luxury Sheets is far less" than 1,000. *Id.* ¶ 37. Plaintiffs do not allege that they tested the Luxury Sheets at all, that such testing was performed pursuant to ASTM 3775, or what the testing showed about the sheets' thread count. Nor do Plaintiffs allege that any other entity has tested the sheets and

found that their thread count is less than advertised. In short, Plaintiffs have failed to sufficiently allege the basic premise of the Complaint: that the advertised thread count is false.

In this regard, the Complaint is similar to other thread count complaints that courts have dismissed. For instance, one court dismissed plaintiffs' claims for failing "to plausibly allege that they have suffered an injury-in-fact" where "[p]laintiffs have provided no facts to support that the sheets in question contain fewer threads than what is displayed on the labels." *Hill v. AQ Textiles LLC*, 2021 WL 1026740, at *3 (M.D.N.C. Mar. 17, 2021).[5] The court observed that plaintiffs "fail to make any allegations as to the actual thread count of the sheets they purchased," which made it "unclear to the Court on what basis they rest their blanket allegations that the thread counts are inaccurate," and in turn "begs the question of how [p]laintiffs reached their conclusion that they had been injured." *Id.*; *see also Dolch v. Linen Source Inc.*, 2008 WL 11336301, at *1 (M.D. Fla. Jan. 3, 2008) (dismissing deceptive trade practices claim where plaintiff "allege[d] only that the defendant employed a different or distinctive method of counting threads," but "allege[d] nothing meaningful that identifies any actual and tangible defect or deficiency in the quality or performance of the product"). This reasoning is consistent with other false advertising actions where courts have held plaintiffs to their burden to plead *facts* that make it plausible that the challenged representations are false or misleading. *See, e.g.*, *Hawkins v. Coca-Cola Co.*, --- F. Supp. 3d ---, 2023 WL 1821944, at *7 (S.D.N.Y. Feb. 7, 2023) (dismissing plaintiff's "bare, unsubstantiated allegations about the *possibility* that the Product contains artificial DL-Malic acid" because plaintiff did not provide "any additional factual support from product testing" to support her claim); *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d

---

[5] While the *Hill* court found those plaintiffs' failure to allege how they "reached their conclusion that they had been injured" required dismissal of their claims for lack of Article III standing, the court's reasoning is equally applicable in the Rule 12(b)(6) context. 2021 WL 1026740, at *3.

1269, 1279 (C.D. Cal. 2022) (dismissing claims that non-drowsy cough syrup causes drowsiness because plaintiffs failed to "provide[] evidence that the claim is false").

Notably, even if Plaintiffs *did* allege that they performed testing that revealed At Home's thread count methodology did not adhere to ASTM 3775, their Complaint would still fail. "Failing to test goods in a certain, specific way is not a deceptive business practice." *Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*, 2014 WL 4054240, at *13 (S.D.N.Y. Aug. 15, 2014); *see also Adam v. AQ Textiles LLC*, 2021 WL 3475677, at *5 (M.D.N.C. Aug. 6, 2021) (declining "to credit Plaintiffs' conclusory statements that using a different method is a deceptive practice").

The 2005 FTC opinion letter, *see* Compl. ¶¶ 32–34, and the 2017 ITC general exclusion order, *see id.* ¶¶ 35–36, are irrelevant. Plaintiffs do not allege that either document pertained to the Luxury Sheets. Moreover, the agencies' statements that "[a] representation about thread count . . . must be supported by a 'reasonable basis,'" *id.* ¶ 33, that "consumers could be deceived or misled by the practice of stating an inflated thread count," *id.* ¶ 34, or that some manufacturers previously misrepresented that their thread counts were higher than "per testing performed under the A[ST]M D3775 standard," *id.* ¶ 36, have no bearing here given that Plaintiffs have not made any factual allegations about how *At Home* purportedly inflates thread counts. In any event, a district court has found that the FTC letter does not require distributors to use Plaintiffs' interpretation of ASTM 3775. *See Adam*, 2021 WL 3475677, at *5 ("[T]he FTC . . . simply acknowledging without adopting the ASTM method . . . [is] hardly sufficient evidence to show that Defendants are bound by law to use Plaintiffs' preferred thread-counting method"). And the ITC *rescinded* its general exclusion order in 2021—a fact the Complaint does not mention, despite citing the rescission order. *See* Compl. ¶ 35 n.18.

IV.     **Plaintiffs Do Not Sufficiently Allege Actual Damages.**

Plaintiffs must allege they suffered actual damages to state their ICFA, fraud, and express warranty claims. "To prevail on a claim under the ICFA," Plaintiffs must plead that the defendant's deceptive or unfair conduct "caused actual damages." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021) (quotation omitted). Similarly, "a plaintiff must plead actual damages arising from her reliance on a fraudulent statement." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 406 (7th Cir. 2010). And "[t]o state a claim for breach of express warranty under Illinois law, a plaintiff must adequately allege [among other things] . . . damages measured by the terms of the warranty." *Biesterfeld v. Ariosa Diagnostics, Inc.*, 2022 WL 972281, at *5 (N.D. Ill. Mar. 31, 2022).

Plaintiffs do not sufficiently allege they suffered the requisite economic injury as a result of At Home's alleged misrepresentations. For example, Plaintiffs claim At Home deceived them that they were "purchasing a product of a higher quality, durability, and softness than products of the same or substantially similar blends with lower thread counts." Compl. ¶ 9. These assertions are unsupported, as Plaintiffs have not alleged "any standard with which to evaluate whether a sheet is of lower quality or whether it is softer or more comfortable to the consumer," "compare[d] their purchases with any other sheets to demonstrate that one is softer or more comfortable than the other as a result of its higher number of threads," "allege[d] that the sheets in question have deteriorated in any way," or "provide[d] any information as to what length of time the sheets in question would be expected to serve their purpose in order to be appropriately long-lasting." *Adam*, 2021 WL 3475677, at *2.

Nor does Plaintiffs' allegation that they "would not have purchased [the Luxury Sheets], or would have paid a lower price for them, had they known the actual thread count at the time of purchase," Compl. ¶ 11, suffice to plead actual damages. This allegation rests on the premise that

"consumers regularly pay more for higher thread count sheets." *Id.* ¶ 24. The only support for this premise is a 20-year-old news article claiming that "[a] single-ply 300-count can run about $55 a set, while the 600 thread-count sheet that [the Good Housekeeping Institute] claims is only a 300-count is $180 a set." *Id.* But this article about unidentified sheets does not support the proposition that *these* Plaintiffs paid more for the Luxury Sheets they supposedly bought than they would have paid for other sheets with a "true" 1,000 thread count. Plaintiffs do not, for instance, compare "the price they paid to the prices of any other [similarly] sized sheet set of any thread count." *Adam*, 2021 WL 3475677, at *3. Nor do they "show[] that the prices they paid were higher than the price of any comparable product." *Id.*

In fact, Plaintiffs plead themselves out of alleging an economic injury. Plaintiffs allege that At Home should have known the stated thread counts were false "because the prices for the Luxury Sheets are *lower* than those for authentic bed sheets of the same or substantially similar blends with the advertised thread counts." Compl. ¶ 41 (emphasis added). Plaintiffs cannot plausibly allege to have suffered an economic injury as a result of At Home's purported fraud when they also allege they paid *less* for At Home's sheets than they would have for genuine 1,000-thread-count sheets.

In the end, these allegations are "predicated on mere speculation, hypothesis, conjecture or whim," not factual allegations. *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008) (quotation omitted). Their fraud-based claims must be dismissed as a result. *See Adam*, 2021 WL 3475677, at *3 (dismissing similar allegations because "[w]ith regards to paying a higher price for their sheets, Plaintiffs fail to allege any facts beyond the blanket assertion that, given the thread count, they should have paid less for these products"); *Hill*, 2021 WL 1026740, at *3 ("Plaintiffs once again fail to allege any facts beyond the blanket assertion that they have

overpaid. They decline to compare, for instance, the price they paid to the prices of any sheets with a corresponding thread count they deem to be accurate. They likewise decline to compare the price of their sheets to those with a lower thread count."); *see also Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *3–4 (D.N.J. Apr. 26, 2007) (dismissing complaint where plaintiff "failed to adequately plead the existence of a causal nexus between the alleged misrepresentations [regarding thread counts] and his ascertainable loss").

## V.  Plaintiffs' Unjust Enrichment Claim Fails Along with Their Fraud Claims.

"Where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Ibarolla*, 2012 WL 5381236, at *8 (quotation omitted). Because Plaintiffs' fraud claims fail, their unjust enrichment claim, *see* Compl. ¶¶ 137–47, must be dismissed as well.

## VI.  Plaintiffs Fail to State a Claim for Breach of Express Warranty.

Plaintiffs do not specify under which law they bring their breach of express warranty claim. *See id.* ¶¶ 106–20. That requires dismissal of this cause of action at the threshold. *See Moore v. EO Prods., LLC*, 2023 WL 6391480, at *9 (N.D. Cal. Sept. 29, 2023) (dismissing express warranty claim where plaintiff "fails to allege under which state's law he is bringing" the claim). In any event, even assuming *arguendo* Plaintiffs' claims are for breach of an express warranty under Illinois or Ohio law, or breach of a written warranty under the Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*, any such claim would fail.

First, Plaintiffs must allege the terms of an actionable warranty. *See Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *5 (N.D. Ill. Mar. 1, 2022) ("In general, a plaintiff must state the terms of the warranty alleged to be breached or attach it to the complaint." (quotation omitted)); *Bonahoom v. Staples, Inc.*, 2021 WL 1020986, at *8 (N.D. Ill. Mar. 17, 2021) ("the

13

requirements [of a MMWA claim] are identical to those of [an] express warranty claim" arising under state law). But the "stated thread counts on sheets do not constitute a written warranty," since an advertised thread count does not list "a specified level of performance over a specified period of time." *Hawes v. Macy's Inc.*, 346 F. Supp. 3d 1086, 1092 (S.D. Ohio 2018) (emphasis omitted). Because At Home's statement that the Luxury Sheets have a thread count of 1,000 is not a "guarantee[] of performance over a specified period of time," Plaintiffs' warranty claim fails. *Hill v. AQ Textiles LLC*, 582 F. Supp. 3d 297, 313 (M.D.N.C. 2022). For the same reason, At Home's statement that the Luxury Sheets have a "Silky Soft Sateen Weave" or are "Cotton Rich" also are not, as Plaintiffs suggest, warranties "that higher thread count bed sheets are softer, more comfortable, and of an overall higher quality than those with a lower thread count." Compl. ¶¶ 3–5; *see also Beautiful Home*, 2014 WL 4054240, at *12 (S.D.N.Y. Aug. 15, 2014) ("The words '100% cotton' and a stated thread count, however, cannot constitute a written warranty under the MMWA because neither of these labels promises that the sheets are defect-free nor that they will meet a specified level of performance over a specified period of time.").

Second, Plaintiffs' express warranty claims must be brought "within a reasonable time after [they] discover[ed] or should have discovered any breach." 810 Ill. Comp. Stat. Ann. 5/2-607(3)(a); *see also* Ohio Rev. Code Ann. § 1302.65(C)(1) (same); *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 799 (N.D. Ill. 2016) ("[A] complaint [must] provide factual allegations sufficient to establish pre-suit notice to sustain a breach of warranty claim under the U.C.C. and MMWA."). But Plaintiffs do not allege when they discovered the purported breach of warranty, much less that they brought their claims within a reasonable time period after discovering the alleged breach. This defect is fatal to Plaintiffs' warranty claim. *See Muir*, 2016 WL 5234596, at *9 (noting that plaintiff's warranty

claim could be dismissed for failing to allege "that she provided defendant with notice of the alleged breach within a reasonable time after she discover[ed] or should have discovered [it]" (quotation omitted)).[6]

## VII. Plaintiffs' Request for Injunctive Relief Should Be Denied.

Plaintiffs repeatedly ask this Court to enjoin At Home from inflating the thread counts of Luxury Sheets. *See* Compl. ¶¶ 79, 105. But Plaintiffs do not adequately allege they are entitled to injunctive relief. Plaintiffs "lack[] standing to seek injunctive relief because [they] do[] not have a likelihood of *future injury*." *Calderon*, 2023 WL 3627797, at *6. They are "now aware of [At Home's] alleged deceptive practices," and they "fail[] to provide a concrete basis to conclude that the plaintiffs will or must purchase the product again in the future and be deceived." *Id.* (quotation omitted); *see also Camasta*, 761 F.3d at 741 ("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future. Without more than the speculative claim that he will again be harmed by JAB, Camasta is not entitled to injunctive relief."). Plaintiffs also cannot seek injunctive relief because they do not allege that legal damages—compensating Plaintiffs for the amount they allegedly overpaid for the sheets—are inadequate. *See Hawes v. Macy's Stores W. Inc.*, 2022 WL 815298, at *5 (S.D. Ohio Mar. 16, 2022) (dismissing request for injunctive relief "[b]ecause Plaintiff has failed to allege or show the inadequacy of legal damages"). Plaintiffs' demand for injunctive relief should be denied.

## CONCLUSION

This Court should grant At Home's motion and dismiss the Complaint.

---

[6] Plaintiffs' express warranty claims should also be dismissed for "fail[ing] to allege that [they] provided [At Home] 'reasonable' or statutory pre-filing notice and opportunity to cure." *Morrison v. Ross Stores, Inc.*, 2018 WL 5982006, at *5 (N.D. Cal. Nov. 14, 2018) (dismissing breach of warranty claims related to bed sheet thread counts for failure to allege pre-suit notice).

Dated: November 13, 2023                Respectfully Submitted,

By: */s/ Daniel L. Stanner* _____

Daniel L. Stanner
TABET DIVITO & ROTHSTEIN
209 S. LaSalle St., 7th Floor
Chicago, IL 60604
Direct: (312) 762-9461
dstanner@tdrlaw.com

Cortlin H. Lannin (admitted *pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Direct: (415) 591-7078
clannin@cov.com

Stephen M. Rees
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
Direct: (202) 662-5262
srees@cov.com

*Attorneys for Defendants At Home Group Inc., At Home Stores LLC, and At Home Procurement Inc.*

16

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on November 13, 2023, I electronically filed the foregoing **DEFENDANTS AT HOME GROUP INC., AT HOME STORES LLC, AND AT HOME PROCUREMENT INC.'S MOTION TO DISMISS THE COMPLAINT & MEMORANDUM OF LAW** using this Court's CM/ECF service. All counsel of record will be served via the Court's CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

*/s/ Daniel L. Stanner*